**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-50810
_____

KENNETH WHITE,

                    Plaintiff - Appellee,

versus

UNITED STATES OF AMERICA,

                    Defendant - Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

June 23, 1998

Before KING, EMILIO M. GARZA, and DEMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The United States appeals from the district court's denial of it motion to stay pending a decision by the Secretary of Labor on the determination of Federal Employees' Compensation Act ("FECA") coverage and of its subsequent motion for reconsideration on the same issue. Because a substantial question of FECA coverage exists, we reverse the district court's denial of the government's motion to stay, vacate the subsequently entered judgment, and remand to the district court with instructions to stay the case pending the Secretary's determination of FECA coverage.

Kenneth White is a civilian employee of the Department of the Army at the White Sands Missile Range in New Mexico. White was driving home from work on a street within the military installation when a government vehicle driven by a military policeman struck his car. White sustained personal injuries and damage to his car as a result of the accident.

White filed a Federal Torts Claims Act ("FTCA") lawsuit against the United States in the El Paso Division of the Western District of Texas. The government filed a motion to stay the proceedings pending a decision by the Secretary of Labor on the issue of FECA coverage. The district court denied the government's motion as well as a subsequent motion for reconsideration. Several months later, the parties stipulated to entry of judgment, pursuant to which the government conceded liability, and the parties agreed to the amount of damages for White's personal injuries and the property damage to White's automobile. The parties further agreed, however, that the district court's entry of final judgment would be without prejudice to the government's right to appeal (1) the issue of whether FECA deprives the district court of subject matter jurisdiction of the FTCA claim and (2) the district court's orders denying the government's two motions. Following the district court's entry of final judgment, the government timely appealed.

II

The government contends on appeal that the district court erred in holding that no substantial question of FECA coverage

-2-

exists as to the injuries White sustained.[1]  This is a question of law that we review *de novo*.  *See Concordia v. United States Postal Serv.*, 581 F.2d 439, 442 (5th Cir. 1978).

FECA provides compensation for a federal employee's personal injuries "sustained while in the performance of his duty."  5 U.S.C. § 8102(a).  For injuries within its coverage, FECA's remedy is exclusive of any other remedy, including the FTCA.  5 U.S.C. 8116(c).  Like workers' compensation statutes generally, "[FECA] is intended to serve as a substitute rather than a supplement for the tort suit."  *Bailey v. United States*, 451 F.2d 963, 965 (5th Cir. 1971).  FECA vests with the Secretary of Labor the power to "administer, and decide all questions arising under [FECA]," 5 U.S.C. § 8145, and the Secretary's action in allowing or denying an award under FECA is final and conclusive and not subject to review by a court of law, 5 U.S.C. § 8128(b).

Our jurisdiction with regard to FECA is limited to determining if a substantial question of coverage under FECA exists.  *See Concordia*, 581 F.2d at 442; *Bailey*, 451 F.2d at 967.  A substantial question exists unless it is certain that the Secretary of Labor would find no coverage under FECA.  *See Concordia*, 581 F.2d at 442.  Thus, "[t]o avoid sending the case to the Secretary of Labor, we must essentially decide as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage of

---

[1]     We need not address White's property damages on appeal because, as the government concedes, FECA does not cover these property damages. *See* 5 U.S.C. § 8102; *Anneliese Ross*, 42 E.C.A.B. 371, 372 (1991).

[White's] claim." *Id*. We cannot deny the Secretary the opportunity to decide the question of coverage "unless we are certain that he would find no coverage." *Id*. Only if we are certain that the Secretary of Labor would conclude that the employee's injuries do not present a substantial question of coverage under FECA may we entertain the employee's FTCA claim without the employee first submitting the claim to the Secretary of Labor.[2] *Bailey*, 451 F.2d at 965. Accordingly, our task here is to determine whether a substantial question of coverage exists.

A

The parties dispute whether White's injuries were "sustained while in the performance of his duty" and, therefore, whether there is a substantial question of coverage. The government contends that because the Secretary of Labor has found coverage in cases factually similar to White's, we cannot be certain that the Secretary could not find coverage here. White, on the other hand, argues that the circumstances of his accident are factually indistinguishable from those in *Bailey*, in which we held that there was not a substantial question of coverage. Therefore, under our own circuit law, he argues, no substantial question of coverage can exist.

At the center of the parties' dispute is the application of the "premises rule," which provides that an employee's injuries are compensable when sustained on the employer's premises while the

---

[2] If a plaintiff's case is submitted to the Secretary, and the Secretary finds no FECA coverage, the plaintiff is free to proceed under the FTCA. *See Concordia*, 581 F.2d at 444.

employee is going to or from work. *See Bailey*, 451 F.2d at 965-66; 1 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 15.00 (1997). As support for its argument that the Secretary would likely find that White's injuries were sustained in the performance of duty, the government cites two ECAB decisions, *Gordon R. Woodruff*, No. 89-390, 1989 WL 221872 (Empl. Comp. App. Bd. 1989), and *Anneliese Ross*, 42 E.C.A.B. 371 (1991), in which the Secretary, applying the premises rule, found coverage for injuries sustained by employees while the employees were driving on the employer's premises and going either to or from work. In *Ross*, Anneliese Ross, a civilian military employee, was injured while she was driving to work on a road within the military reservation, and a military vehicle hit her car. *Ross*, 42 E.C.A.B. at 371. Similarly, Gordon Woodruff, also a civilian employee on a military base, was injured in a car accident caused by a government vehicle while he was driving on the roads in the military reservation returning from lunch after his regular lunch break. *Woodruff*, 1989 WL 221872, at *1. In both cases, the Board found that the employee's injury was covered under FECA, citing the premises rule as the reason the employee's injuries were sustained in the performance of duty. *Ross*, 42 E.C.A.B. at 373; *Woodruff*, 1989 WL 221872, at *1. Noting that it had interpreted the phrase "sustained in the performance of duty" "to be the equivalent of the commonly found prerequisite in worker's compensation law of

'arising out of and in the course of employment,'"[3] the Board set out the connection between the premises rule and the requirement that the employee's injury occur in the scope of employment:

> Under [FECA] an injury sustained by [an] employee, having fixed hours and place of work, while going to or coming from work is generally not compensable because it does not occur in the performance of duty. This is in accord with the weight of authority under workmen's compensation statutes that such injuries do not occur in the course of employment. However, many exceptions to the rule have been declared by courts and workmen's compensation agencies. One such exception, almost universally recognized, is the premises rule: an employee driving to and from work is covered under workmen's compensation while on the premises of the employer.

*Ross*, 42 E.C.A.B. at 373-74; *see also* 1 LARSON & LARSON, *supra*, § 15.10 (noting that the premises rule has been adopted by the courts with a "surprising degree of unanimity"). As the Board explained in *Ross*, being on the employer's premises because one is reporting to work is a reason related to employment. *Ross*, 42 E.C.A.B. at 374; *see also Woodruff*, 1989 WL 221872, at \*2 (reasoning that because employees "must travel the roads of the employing establishment when going to or coming from work," their traveling on the internal roads of the employer's establishment serves to benefit their employer and is an integral part of their employment,

---

[3]     The Board expanded on the meaning of the phrase "course of employment":
> In the compensation field, to occur in the course of employment, in general, an injury must occur (1) at a time when the employee may reasonably be said to be engaged in his or her master's business; (2) at a place where he or she may reasonably be expected to be in connection with the employment; and (3) while he or she was reasonably fulfilling the duties of his or her employment or engaged in doing something incidental thereto.

*Ross*, 42 E.C.A.B. at 373 (citations omitted).

and, therefore, any injuries sustained in those circumstances are in the performance of their duties).[4]

For his part, White contends that we must follow our decision in *Bailey*, in which we rejected the automatic application of the premises rule, instead holding that the location of the accident is only one of the factors to be considered in determining whether a substantial question of coverage exists. In *Bailey*, the plaintiff, Barbara Bailey, a civilian employee in the army laundry, was injured when her car was struck from behind by a military pickup transporting equipment for use on the rifle range. *Bailey*, 451 F.2d at 965. At the time of the accident, Bailey was traveling home, in her private automobile, on the military reservation's roads. The government argued that because Bailey's injuries occurred on the employer's premises while she was returning home from work, "there [wa]s a very real possibility that the Secretary of Labor would compensate" her. *Id*. Rejecting such a rigid interpretation of the premises rule, we found the better approach to be "examining the issue in light of all relevant factors, including the premises on which the injury took place." *Id*. at 966 (citing *United States v. Browning*, 359 F.2d 937, 940 (10th Cir. 1966)). Holding that "the location of the collision . . . was of

---

[4]    As the ECAB has recognized, the term "premises" is not synonymous with "property" in workers' compensation law. *Woodruff*, 1989 WL 221872, at *2. For property to be considered part of the employer's premises, "there must exist a close[] nexus between the Federal property on which an injury occurs and the use made and benefit received by the employing establishment from that particular piece of Federal property." *Id*. The key, therefore, is the "use made" or "benefit received" by the employer from the particular piece of property on which the injury occurs.

small import and no substantial question of FECA coverage [was] raised by the fortuitous circumstance that the street was owned by the federal government," we allowed the plaintiff to maintain her FTCA claim.[5]  *Id*. at 967.

White claims that his case is distinguishable from *Woodruff* and *Ross* for two reasons.  First, he argues that the ECAB found FECA coverage in those cases because the injured employee was required to travel the *particular* road on which the accident occurred; thus, because White was not required to use the specific road on which his accident occurred and instead had the option of taking a different route, his injury was not related to his employment.  Second, he contends that, unlike Woodruff and Ross, he was no longer conducting the business of his employer when the accident occurred because he had already left his worksite.  In support of these arguments, White quotes the following language from *Woodruff*:

> [E]mployees such as appellant *must* travel the roads of the employing establishment when going to or coming from work, both before and after working hours, and during lunchtime; the use made and benefit received by the

---

[5]      In reaching this result, we took into consideration the two factors that might raise a substantial question of coverage: (1) that Bailey was injured while returning home from her job and (2) that she was injured on a public street owned by her employer.  Noting that FECA coverage does not apply solely because an employee is injured on the way home from work, we stated that the government's case turned on the amount of significance we accorded the location of the accident.  Because she was traveling home on a street apparently open to all persons authorized to be on the base, was not under the supervision of her employer, and the driving of her car was not an activity connected to the usual activities of laundry work, we concluded that the street traveled by Bailey was not a "zone of special danger" incident to her laundry employment. *Id.* at 967-68.

> employing establishment from this particular piece of property is that employees arrive and leave the employing establishment, and *conduct the business of the employing establishment, through the use of this property.*

*Woodruff*, 1989 WL 221872, at *3 (emphasis supplied by White). White's reliance on this passage is, however, misplaced. The ECAB in fact ruled that neither the particular road on which Woodruff traveled nor the personal nature of Woodruff's trip was relevant. *See id.* at *2-3; *Gordon R. Woodruff*, No. 89-390 (order on petition for rehearing) (Empl. Comp. App. Bd. Oct. 26, 1989). Instead, the Board concluded that these internal roads were an integral and necessary component of the employing establishment's business))the employing establishment (*i.e.*, the military) used and benefitted from the roads because the employees used them to travel on and off the military reservation on their way to and from work. *See Woodruff*, 1989 WL 221872, at *3.[6]

---

[6] White also attempts to distinguish the ECAB cases cited by the government by noting that the ECAB has recognized that injuries sustained by an employee on the employer's premises are not compensable when "the employee's presence on the employer's premises at the time of the injury was for the employee's personal convenience rather than being related to their employment." *Ross*, 42 E.C.A.B. at 374. White, however, takes this statement out of context. In fact, in making this statement, the Board was explaining why Ross' traveling to and from work on her employer's premises was related to her employment and was contrasting cases in which the employee was on the employer's premises for personal, nonemployment-related reasons. *See Ross*, 42 E.C.A.B. at 374 (citing *Joann Curtiss*, 38 E.C.A.B. 122, 125-26 (1986) (finding no coverage for employee injured when she stopped after working hours at a hospital that was also on the employer's premises to fill a prescription for her sister); *Nona J. Noel*, 36 E.C.A.B. 329, 331-32 (1984) (finding no coverage for employee who arrived to work an hour and a half early to eat breakfast at the noncommissioned officers club, where her injury occurred); *Donald C. Huebler*, 28 E.C.A.B. 17, 22-24 (1976) (finding no coverage for employee injured in baseball game after work where employing establishment did not sponsor or exercise control over the baseball league); *Thelma B.*

Despite White's attempts to distinguish *Ross* and *Woodruff*, we find his case to be factually similar to the ECAB's *Woodruff* and *Ross* cases as well as this court's decision in *Bailey*. In all three cases, a civilian employee traveling on an internal road of a military reservation sustained personal injuries in a motor vehicle accident caused by another federal employee. Furthermore, *Bailey* and the ECAB cases employ a similar analysis of whether the employee's injury is sustained in the performance of duty: both ask whether there is sufficient nexus between the injury and the employment to sustain FECA coverage of the employee's injuries, and both assign some weight to the premises rule in their analysis. *Bailey*, 451 F.2d at 966-67; *Ross*, 42 E.C.A.B. at 373-74. The cases diverge, however, when determining how much weight to accord the fact that the employee was traveling to or from work on the employer's premises.

*Bailey* can be reconciled with these ECAB decisions, the government suggests, because our role is limited to determining whether the Secretary would find coverage, and, in adhering to that limit, we must consider the Secretary's relevant past decisions. The government contends that if we take into consideration ECAB decisions such as *Woodruff* and *Ross*, we cannot be certain that the Secretary of Labor would not find coverage in the instant case. The government explains that *Bailey* reached a different result because the *Bailey* court did not have the benefit of ECAB decisions

*Barenkamp*, 5 E.C.A.B. 228, 229-30 (1952) (finding no coverage for employee injured while hunting squirrels on employer's premises after work)).

such as *Woodruff* and *Ross*, which make clear how the Secretary weighs the location of the employee's accident in determining coverage. Now that the Secretary has clarified FECA's application to circumstances similar to White's, the government argues, we cannot be certain that the Secretary would deny FECA coverage to White.

We find the government's arguments persuasive. In *Concordia*, we defined the limits of our jurisdiction: we are to send the case to the Secretary unless we are certain that the Secretary could not find coverage of White's claim. *Concordia*, 581 F.2d at 442-43. As we did in *Concordia*, therefore, we should look to decisions of the Secretary to determine whether a substantial question of coverage exists here. *Id*. at 441 (examining ECAB cases cited by government and finding that although the cases were not totally analogous, they provided at least an arguable basis for the Secretary's finding coverage).

We have explained the basis of this deferential standard: because FECA precludes judicial review of the Secretary's action in allowing or denying payment, "[i]t stands to reason . . . that if we cannot correct what we deem to be errors in the Secretary's determination, we should not be able to deny him the opportunity to make such decisions unless we are certain that he would find no coverage." *Id*. at 443. Congress has conferred on the Secretary the exclusive authority to administer FECA, 5 U.S.C. § 8145, to decide all questions arising under FECA, *id*., and to prescribe all rules and regulations necessary to administer and enforce FECA, 5

-11-

U.S.C. § 8149. In structuring FECA to confer this exclusive and broad authority on the Secretary of Labor, Congress made clear its intention that FECA be interpreted and applied uniformly. *See, e.g.*, H.R. Rep. No. 105-446, at 2 (1998) ("The Federal Employees' Compensation Act . . . is a comprehensive workers' compensation law for federal employees that is designed to provide uniform coverage for work-related injuries or deaths."). As we stated previously, our role here is limited to determining whether a substantial question of coverage exists. We are not to determine whether White's injuries are compensable under FECA))that is a decision Congress left for the Secretary to make. Moreover, looking to the decisions of the Secretary to determine whether a substantial question of coverage exists and sending the case to the Secretary if we find such a question are the most effective ways of carrying out Congress's intent. *See Woodruff v. United States Dep't of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 640 (11th Cir. 1992) (explaining that because Congress has entrusted the Department of Labor with administering the FECA, "a court would give deference to the Secretary's interpretation of FECA even without the statutory preclusion of judicial review.") (citing *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 102 S. Ct. 38, 70 L. Ed. 2d 23 (1981)); *see also Texports Stevedores Co. v. Director, Office of Workers' Compensation Programs*, 931 F.2d 331, 333 (5th Cir. 1991) ("According to the Supreme Court, '[c]onsiderable weight should be accorded to an executive department's construction of a statutory

scheme it is entrusted to administer.'") (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984)). If we were to decide that no coverage exists here solely because of *Bailey* and without regard to relevant decisions by the Secretary, we would be abridging the authority Congress expressly granted to the Secretary to determine FECA coverage as well as defeating Congress's intent that FECA be uniformly interpreted and applied. Without consideration of the intervening decisions of the Secretary, we would also be allowing two independent bodies of FECA law to develop))with the result that an employee's FECA coverage may differ depending on whether the employee first brought his case in federal court or to the Secretary. *Bailey* does not, and indeed cannot, stand for the proposition that no FECA coverage exists even when the Secretary's past decisions provide at least an arguable basis that the Secretary would find coverage of White's injuries.

Furthermore, as the government asserts, the Board did clarify after *Bailey* that coverage may be afforded under facts similar to those in *Bailey*. *See Ross*, 42 E.C.A.B. at 374-75; *Woodruff*, 1989 WL 221872 at *3-4. In fact, in *Ross*, the Secretary rejected Ross' argument that the Secretary should follow *Bailey*, explaining that *Bailey* failed to recognize that "injuries sustained by employees on the employer's premises while going to or from work are compensable under the FECA." *Ross*, 42 E.C.A.B. at 375 (citing *Alvina B. Piller*, 7 E.C.A.B. 444 (1955); *Raymond F. Brennan*, 14 E.C.A.B. 249 (1963)). We recognize that Board cases preceding *Bailey* invoked

-13-

the premises rule, *see, e.g.*, *Brennan*, 14 E.C.A.B. at 249-50 (finding coverage where employee slipped and fell in parking lot that employer contracted for employees' exclusive use, even though parking lot partially extended into public street), but, unlike *Woodruff* and *Ross*, those cases did not involve facts similar to those in *Bailey*.

We therefore hold that the Secretary should be presented with this case. ECAB decisions since *Bailey*, such as *Woodruff* and *Ross*, provide a substantial question that the Secretary could find coverage in the instant case. In *Concordia*, although we did not find any ECAB cases presenting facts identical to that case, we sent the case to the Secretary because we could not be "absolutely sure of what action the Secretary would take." *Id*. at 442. Here, the government cites ECAB cases that are even more analogous to White's case than the cases the government cited in *Concordia* for that employee's case. Thus, because we cannot be assured that the Secretary would deny White FECA benefits, *see Concordia*, 581 F.2d at 443, we hold that the district court erred in denying the government's motion for stay.[7] We reiterate, however, that we are

_____

[7]    White endeavors to distinguish *Concordia* by pointing to the "fact" that he was injured twenty miles from where he worked whereas the employee in *Concordia* was injured occurred in front of the employee's building. The government responds that because this factual assertion is not supported by affidavit or otherwise in the record, we cannot properly consider it on appeal. *See In re GHR Corp. v. Crispin*, 791 F.2d 1200, 1201 (5th Cir. 1986) (noting that "this court is barred from considering filings outside the record on appeal"). We previously denied plaintiffs' motion to supplement the record on this very point of fact. *See White v. United States*, No. 96-50810 (5th Cir. July 16, 1997) (order). Moreover, even assuming *arguendo* that this fact were adequately supported by the record, White has failed to show why this fact would warrant a

-14-

not deciding whether White's injuries are covered under FECA, nor are we deciding the scope of FECA. Our decision today is a limited one: we conclude only that a substantial question of coverage exists under FECA as to whether White's injuries were sustained in the performance of his duties. The final determination of FECA coverage for White's injuries lies with the Secretary of Labor.[8]

different conclusion than the one we reach here. Although the distance traveled by White before the accident may be a dispositive factor for the Secretary, we cannot conclude based on *Concordia* or the Secretary's prior decisions that this factor eliminates the substantial question of coverage that exists. *See Concordia*, 581 F.2d at 443 ("[A]lthough the Secretary may quite conceivably rule that [the employee's] injury does not fall within the scope of FECA, the facts raise a question that must initially be referred to agency determination."). Thus, as we decided in *Concordia*, "it would be unwise for us to prevent the Secretary from even considering the case." *Id.* at 443.

[8] White presents two reasons why we should nevertheless affirm the district court's decision. First, as he states in his brief,

> this court should consider the U.S.A.'s position as a violation of a clear federal statutory mandate, and affirm the district court's judgment. A federal court may exercise jurisdiction over a decision of the Secretary of Labor concerning FECA when the Secretary violates a clear statutory mandate or prohibition. . . . Therefore, this court should affirm the district court's FTCA judgment because the Government has shown its willingness to violate a clear statutory mandate.

Because, at this point, the Secretary has not rendered a decision that we could consider as violating a clear statutory mandate, we reject this contention. White also alleges that he has been deprived of an FTCA cause of action, a species of property, without due process of law. We have, however, previously upheld the FTCA's exclusive remedy provision to a similar constitutional challenge. *See Benton v. United States*, 960 F.2d 19, 22-23 (5th Cir. 1992) (holding that FECA's exclusive remedy provision did not deprive injured federal employee of equal protection and due process rights, even though employee's FTCA suit was barred, because "the FECA bar applies only to those claims arising out of injuries incurred in the scope of employment" and "[t]he government has a legitimate reason for maintaining a federal workers' compensation program in this manner"). Moreover, in making this argument, White again assumes the occurrence of an event that has not occurred,

-15-

III

For the foregoing reasons, we hold that the district court erred in denying the government's motion to hold the case in abeyance pending the determination of FECA coverage by the Secretary of Labor.[9]  *See Concordia*, 581 F.2d at 444 (advocating this procedure, as opposed to dismissal, to avoid the running of the statute of limitations for the FTCA, 28 U.S.C. § 2401(b), and leaving White with no remedy).  If, after remand, White presents his claim to the Secretary, and the Secretary determines that FECA provides White's remedy, then White must pursue the claim accordingly.  If, however, the Secretary finds no FECA coverage, White will be able to pursue his claim under the FTCA, in which case the district court is free to reinstate the judgment.  *See id*. Accordingly, we REVERSE the district court's denial of the government's motion to stay,  VACATE the subsequently entered judgment, and REMAND to the district court with instructions to stay the case pending the Secretary's determination of FECA coverage.

---

namely, the final determination of FECA coverage of his claim. Unless and until the Secretary determines that White's claim falls within FECA's coverage, White has not been deprived of an FTCA claim.  We therefore also find White's due process claim to be meritless.

[9]     In reaching this decision, we have not considered the opinion letter of Thomas M. Markey, Director for Federal Employees' Compensation, Office of Workers' Compensation Programs, which the government submitted below in connection with its motion for reconsideration.